**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Jeffrey Osgood d/b/a
JP's Concrete

    v.                                    Civil No. 11-cv-477-SM

George and Evelyn Kent

**O R D E R**

In a case that has been removed from the Grafton County
Superior Court, Jeffrey Osgood has sued George and Evelyn Kent,
asserting claims for breach of contract and quantum meruit.
Osgood seeks to recover money he claims to be owed for
demolition and construction work he performed for the Kents
under a contract the Kents terminated before the completion of
the work for which they hired him.  When Osgood filed his
complaint in state court, he also filed a petition/motion for
ex-parte attachment, to perfect a mechanics's lien.  The
Superior Court granted the motion and awarded Osgood an
attachment in the amount of $35,750.  After the case was
removed, the Kents objected to the attachment and requested a
hearing, which was conducted on November 30, 2011.  For the
following reasons, $23,750 of the attachment ordered by the

Superior Court is discharged, but an attachment in the amount of $12,000 remians in force.

## Background

The following narrative is drawn from the materials submitted by the parties and evidence presented at the hearing. The Kents contracted with Osgood to perform three kinds of work at Ogontz Hall, a building they own in Lyman, New Hampshire. Specifically, they engaged Osgood to shore the building, undertake selective demolition, and erect cast-in-place concrete footings and walls. Osgood poured concrete on December 17, but the Kents were not satisfied with the quality of the concrete he used. The Kents' architect and structural engineer concluded that Osgood's work needed to be redone. Osgood disagreed, and never returned to continue work on the construction site.

By letter dated May 6, 2011, the Kents terminated their contract with Osgood. Their letter stated, in pertinent part:

> Notice is given that you are not to enter the premises of Ogontz Camp for any reason without the express permission of the owners or their representatives. . . .
>
> You are not to disassemble or move any of your cribbing and support beams that are shoring the building. They are to remain in place until the walls poured on December 17 are replaced and the building is able to sit on their replacements, or until alternative arrangements are able to be made to shore the building. At that time either the cribbing and beams will be removed and made available to you to

    pick up, or you will be contacted to disassemble and
    remove them yourself.

Pl.'s Ex. 5, at 4.

    The Kents have never notified Osgood that his cribbing and
beams are available to be picked up, nor have they contacted him
to remove those items.  On August 30, 2011, Osgood sent the
Kents a bill for $35,750, seeking payment for the following
items, characterized as extra work above the contract agreement:
(1) cutting a concrete floor; (2) recribbing all of the north
wall twice; (3) demential demolition of the north end of the
west wall; (4) removing the superior wall system at the car port
and replacing it with CIP (cast in place) concrete; (5) removing
the superior wall at the east side of the elevator pit and
cribbing; (6) winter heat in wall mix; (7) machine time to build
road for concrete truck and to plow snow; (8) plate compactor
rental; and (9) I-Beam and cribbing rental from May 6, 2011 to
September 6, 2011.  See Pl.'s Ex. 6.  At the hearing, Osgood
testified that while none of the "extra work" described above
was performed under a written change order, he received oral
permission from the Kents' representative to perform some of
that work, and the remainder of it was so obviously necessary
that the Kents' representative would have been aware of the need
for it.  The attachment ordered by the Superior Court is for
$35,750, the full amount of Osgood's August 30 bill.

**Discussion**

The Kents argue that the court should discharge the attachment because: (1) Osgood is not entitled to a mechanic's lien based on work he performed outside the contract, for which he seeks to recover under quantum meruit; (2) Osgood failed to perfect his lien within the 120 days required by N.H. Rev. Stat. Ann. ("RSA") 447:9; (3) Osgood is not entitled to a mechanic's lien for the use of his equipment after the termination of his contract; and (4) Osgood has not been vigilant in protecting his rights. Osgood disagrees, categorically. The court begins by outlining the relevant law and then turns to each of the Kents' four arguments.

### A. The Law of Mechanic's Liens

In federal court, "[p]re-judgment attachments are available to secure satisfaction of judgments 'under the circumstances and in the manner provided by the law of the state where the district court is held.'" H.E. Contr. v. Franklin Pierce Coll., 360 F. Supp. 2d 289, 290 (D.N.H. 2005) (quoting Fed. R. Civ. P. 64).

> Under New Hampshire law, a mechanic's lien is a statutory right that arises automatically upon the provision of labor or materials. See N.H. Rev. Stat. Ann. ("RSA") Chapter 447:2. The lien provides security against the property owner for the value of the labor or materials rendered. Pine Gravel, Inc. v. Cianchette, 128 N.H. 460 (1986).

H.E. Contr., 360 F. Supp. 2d at 290-91. (footnote and parallel

citations omitted).  The New Hampshire Supreme Court has

recently described the mechanics of the mechanic's-lien statute:

> Under RSA 447:2, a person who performs labor or
> furnishes material, "to the amount of $15 or more,"
> for building or repairing a house, has "a lien on any
> material so furnished and on said structure, and on
> any right of the owner to the lot of land on which it
> stands."  RSA 447:2 (2002).  The lien continues for
> 120 days after the services are provided or the
> materials are furnished, RSA 447:9 (2002), and may be
> secured in accordance with RSA 447:10, which provides:
> "Any such lien may be secured by attachment of the
> property upon which it exists at any time while the
> lien continues, the writ and return thereon distinctly
> expressing that purpose."  RSA 447:10.

Alex Builders & Sons, Inc. v. Danley, 161 N.H. 19, 22-23 (2010).

Regarding the application of those statutes, "[f]ailure to

comply with the specific statutory provisions of perfecting a

mechanics lien is usually fatal."  Alex Builders, 161 N.H. at 23

(quoting Rodd v. Titus Constr. Co., 107 N.H. 264, 266 (1966);

citing Gen. Insul. Co. v. Eckman Constr., 159 N.H. 601, 609

(2010)).  This is because "[t]he remedy of attachment is in

derogation of the common law."  Alex Builders, 161 N.H. at 23

(quoting Maine Nat'l Bank v. Baker, 116 N.H. 185, 186 (1976)).

On the other hand, however, "strict compliance with a statute

does not equate to strict construction of its terms."  Alex

Builders, 161 N.H. at 24 (quoting Impact Food Sales, Inc. v.

Evans, 160 N.H. 386, 399 (2010) (Hicks, J., dissenting)).

> This is especially true where "[t]he purpose of the
> mechanics' lien law is remedial, to guarantee
> effective security to those who furnish labor or
> materials which are used to enhance the value of the
> property of others." Innie v. W & R, Inc., 116 N.H.
> 315, 317 (1976). The general rule is to construe
> remedial statutes liberally in favor of the person the
> statute is intended to benefit. See, e.g.,
> Stankiewicz v. City of Manchester, 156 N.H. 587, 594
> (2007).

Alex Builders, 161 N.H. at 24 (parallel citations omitted).

After an attachment is made to secure a mechanic's lien,
the party against whom the attachment has been made is entitled
to a prompt hearing. See RSA 511-A:8. The scope of such a
hearing is limited:

> [T]he content and focus of a post-attachment hearing
> on a mechanic's lien is whether the plaintiff has met
> its burden under RSA 511-A:8, which defendant may
> rebut. [Consol. Elec. Distrib., Inc. v. SEC Concord
> Co., No. 89-C-171/179 (Merrimack Cty. Super. Ct. Nov.
> 21, 1989).] The defendant may challenge the
> plaintiff's basic right to recovery under RSA 447, the
> lien amount, or notice provisions. Id.; see also West
> Side Dev. Group, LLC v. D'Amour, No. 04-C-018,
> (Carroll County Superior Ct., March 24, 2004) . . .
> (finding that the provisions of RSA 511-A:3 specifying
> the "reasonable likelihood of success test" and the
> "sufficiency of assets test" do not apply to a
> mechanic's lien proceeding under RSA 477).

H.E. Contr., 360 F. Supp. 2d at 291.

## B. Work Outside the Contract

The Kents' first argument is that because the work giving
rise to Osgood's lien is described by Osgood himself as "Extra
Work Above Contract Agreement," Pl.'s Ex. 6, that work

6

necessarily falls outside the ambit of the mechanic's-lien
statute, which is limited to work "for erecting a house or other
building . . . by virtue of a contract with the owner thereof."
RSA 447:2.  The problem with the Kents' argument is that it
conflates compliance with the statutory provisions for
perfecting a mechanic's lien, which must be strictly enforced,
see Alex Builders, 161 N.H. at 23, with statutory construction
which should be liberal, see id. at 24.  Here, the question is
whether the work for which Osgood received an attachment was
undertaken "by virtue of a contract" with the Kents.  Construing
that phrase liberally, as the court must, Osgood's extra work
was undertaken by virtue of his contract with the Kents; it is
only by direct reference to that contract that Osgood's work was
"extra."  Moreover, it cannot seriously be argued that Osgood
would have undertaken his "extra" work if not for the work under
the contract that preceded it.  Finally, the court notes that in
Alex Builders, in which the New Hampshire Supreme Court reversed
the trial court's discharge of the plaintiff's mechanic's lien,
"the plaintiff sued the defendants under theories of breach of
contract, quantum meruit and unjust enrichment."  Id. at 21.  In
short, the Kents' first argument is without merit.

C. Failure to Timely Perfect

The Kents' principal argument is that Osgood failed to perfect his mechanic's lien in a timely manner.  While they do not say when the 120-day period for perfecting the lien created by RSA 447:9 began, they argue that whenever it began, it had run its course by the time Osgood moved the state court for an ex-parte attachment.  Osgood, on the other hand, argues that the statutory time period commenced on August 30, 2010, the date on which he submitted his bill to the Kents or, at the very earliest, on May 6, the date on which the Kents terminated their agreement with him.  Neither party is entirely correct.

The court begins with the language of the statute, which provides that "[t]he lien created by RSA 447:2-7, inclusive, shall continue for 120 days after the services are performed, or the materials, supplies or other things are furnished, unless payment therefor is previously made."  RSA 447:9.  "In the absence of waiver[,] failure to comply with the statutory provisions for perfecting the mechanic's lien is usually fatal." Tolles-Bickford Lumber Co. v. Tilton Sch., 98 N.H. 55, 57 (1953) (citing Couillard v. O'Connor, 97 N.H. 89 (1951); Ferns v. Am. Moore Peg Co., 81 N.H. 283 (1924)); see also Alex Builders, 161 N.H. at 23.

Osgood's argument that the time period for perfecting his
lien began to run on May 6, because that day marked the
termination of his contract with the Kents, is incorrect.  None
of the three cases he cites to support that argument is on
point.  In Pike v. Scott, 60 N.H. 469 (1881), the issue was when
the time period began to run against a plaintiff who had
supplied lumber to the defendant in several lots.  The central
holding of that case is this:

> If the materials were furnished under one entire
> contract, one indivisible lien for the whole was
> created thereby.  Phil. Mech. Liens, s. 324.   Each
> lot of lumber furnished was not a separate cause of
> action, but a continuous dealing, and the right of
> securing it was not barred until ninety days after the
> delivery of the last lot.

Id. at 471-72.  In Pike, it was not the termination of the
contract that started the clock ticking, but the performance of
the last in a series of identical obligations under the
contract, i.e., the last delivery of materials.  In Boulia-
Gorrell Lumber Co. v. East Coast Realty Co., the New Hampshire
Supreme Court explained:

> It thus appears that the contractor's lien is
> created as soon as any work or materials are furnished
> under the contract, increasing in amount according to
> the progress of the work until performance is
> completed and subject to no impairment from
> intervening changes of the owner's title.

84 N.H. 174, 177 (1929).  As in Pike, the key event identified
in Boulia-Gorrell is not the termination of the contract, but

rather, the completion of performance under the contract.
Finally, notwithstanding Osgood's argument to the contrary,
Tolles-Bickford does not stand for the proposition that the
statutory time period begins to run at the time a supplier bills
a property owner; what started the clock in that case was the
invoice included with the bill which announced the delivery of
certain materials.  See 98 N.H. at 57-58.  Again, the key event
was performance by the supplier, not the date on which the
contract between the supplier and the property owner terminated,
or the date on which the supplier submitted a bill.  To sum up,
a mechanic's lien arises when a person performs labor or
furnishes materials, see RSA 447:2, and that is when the time
allotted for perfecting such a lien begins to run, see RSA
447:9.

Based on the foregoing, the court ordinarily would have no
trouble concluding that in this case, the time for perfecting a
mechanic's lien had run long before September of 2010, given the
undisputed fact that Osgood did no work at Ogontz Hall after the
allegedly unsuccessful pour on December 17, 2009.  Indeed, as to
the first eight items listed in Osgood's bill, his attempt to
perfect his lien is time-barred; none of that work was performed
any later than December 17, which gave Osgood until late April
to perfect.  He did not do so, and that is fatal to his lien.

See Alex Builders, 161 N.H. at 23; Tolles-Bickford, 98 N.H. at 57.

The one exception is the rental fee for Osgood's I-beams and cribbing.  As to that item, and that item only, there is one additional fact that significantly alters the legal landscape. On May 6, the Kents not only terminated their agreement with Osgood, but they also forbade Osgood from retrieving his I-beams and cribbing.  That substantial alteration of the relationship between the Kents and Osgood was enough to give Osgood a mechanic's lien to secure payment for the Kent's rental of his I-beams and cribbing.  When Osgood first delivered and installed those materials, a mechanic's lien arose by operation of statute,[1] and Osgood's time for perfecting that lien expired sometime in April of 2010, at the latest.  But once the Kents terminated their contract with Osgood and exerted dominion and control over Osgood's I-beams and cribbing, those items were no longer at Ogontz Hall pursuant to the original contract; they were there pursuant to some sort of quasi-contractual lease created by the Kents' effort at self-help.  Once the Kents exerted control over Osgood's material, under a new legal relationship – whatever that relationship might be – Osgood got

_____

[1] As the court explains in Section D, infra, Osgood's I-beams and cribbing fall outside the general rule that a mechanic's lien does not arise to secure payment for the rental of equipment.

a 120 days to perfect his new mechanic's lien.  Because he
attempted to perfect that lien within 120 days of the Kents'
exercise of control over his material, his attachment was
timely, but only as to the I-beams and cribbing.

There is another way to look at things that also makes
Osgood's attachment timely.  As the court explains in the next
section, Osgood's I-beams and cribbing are an unusual kind of
material in the context of the mechanic's-lien statute.  If
Osgood and the Kents were fighting over a lien to secure payment
for a load of concrete that became a part of the foundation of
Ogontz Hall, that material would have been furnished on one
specific date, the day it was poured.  Here, however, Osgood did
not furnish his I-beams and cribbing with the idea that once
delivered, they would become a part of Ogontz Hall forever.
Rather, both he and the Kents understood that Osgood's equipment
would stay in place, supporting Ogontz Hall, only until work on
the building had progressed to the point where the building
could stand on its own.  Given that mutual understanding, it
makes sense to see those particular materials as being furnished
not just on the date of their delivery but, rather, for so long
as they remain in place doing service as structural support for
Ogontz Hall.  That is, on every single day that his I-beams and
cribbing have been in place at Ogontz Hall, Osgood has furnished

materials to the Kents.  Under this liberal interpretation of
the statute, the furnishing continues until Osgood's materials
are removed from Ogontz Hall.  Such an expansive view of the
term "furnish" is not without precedent; it builds on the spirit
of Pike, in which an attachment to secure payment for a quantity
of wood was timely when obtained within ninety days after the
delivery of the final shipment, under the theory that multiple
shipments of the same material constituted "continuous dealing."
Pike, 60 N.H. at 471.  Here, Osgood has continuously furnished
his I-beams and cribbing, albeit involuntarily, for the purpose
of supporting Ogontz Hall.

Pike, however, goes only so far.  In that case, where the
court found a unified contract for a certain amount of wood,
seeking an attachment within ninety days after delivery of the
final load was sufficient to support an attachment securing
payment for the entire amount of wood, even loads delivered more
than ninety days before the plaintiff sought to perfect his
lien.  Nothing in Pike, however, would support a similar "look-
back" in this case that would pull in the other eight items in
Osgood's August 30 bill.  Those items are for eight different
services, not eight deliveries of the same material, as in Pike,
or eight performances of the same service.  Beyond that, while
the Kents' May 6 letter gave Osgood a second mechanic's lien to

13

secure the cost of the Kents' use of his I-beams and cribbing, nothing in that letter changed the legal relationship between the Kents and Osgood <u>vis-à-vis</u> the other eight items on his bill.

To summarize, while not for the reasons advanced by Osgood, the Kents' May 6 letter gave him 120 days to perfect a mechanic's lien to secure the rental fee for his I-beams and cribbing from that date forward.  Thus, his motion to attach constitutes timely perfection of his mechanic's lien to the extent of the $12,000 in rent he claims for the I-beams and cribbing.  However, Osgood's motion in the Superior Court came too late to perfect a mechanic's lien based on the other eight items on his August 30 bill.

## D. Inapplicability to Equipment Rental

The Kents next argue that Osgood is not entitled to a mechanic's lien based on their use of his I-beams and cribbing because there is no rental agreement for those items[2] and because, even if there were, the mechanic's-lien statute does not apply to the rental of equipment to a property owner.  The Kents concede that there is no New Hampshire case on point, but

---

[2] The court has already rejected the argument that for work to be done "by virtue of a contract," it must be specifically identified in and called for by the language of a written agreement.  <u>See</u> Section B, <u>supra</u>.

argue that the majority rule is that a mechanic's lien does not arise from the rental of equipment that is not consumed or used in construction unless the applicable statute specifically authorizes it. For that proposition, the Kents rely on one case from Rhode Island and another from Idaho. Osgood contends that the I-beams and cribbing for which he charged the Kents a rental fee fall within the New Hampshire statute, as materials he furnished "for consumption or use in the prosecution" of the construction of Ogontz Hall. RSA 447:2. Osgood has the better argument.

To start, the court has little difficulty concluding that the I-beams and cribbing that Osgood supplied qualify as "materials . . . for consumption or use in the prosecution" of the construction of Ogontz hall. RSA 447:2 (emphasis added). If the statute did not draw a distinction between materials consumed in the process of construction and those used therein, the Kents would have a stronger argument, given that a load of concrete, for example, would be "used" very differently from the way a cement mixer would be used on the same construction project. Given the well-understood purpose of the mechanic's-lien statute, it could reasonably be argued that a statute that spoke only of "use" intended to define "use" to mean something along the lines of permanent incorporation into the final

product.  But here, where the statute speaks of materials
consumed, like concrete poured into a foundation, as well as
materials otherwise used, the statute could well contemplate
that the category of materials otherwise used would include
equipment rented to a property owner.

However, even if New Hampshire were to adopt the majority
rule that the provision of rental equipment falls beyond the
scope of the mechanic's-lien statute, that rule, at least as
expressed in the case on which the Kents principally rely, would
not exclude the equipment rental at issue in this case.  In
Logan Equipment Corp. v. Profile Const. Co., the Rhode Island
Supreme Court held that under a statute allowing mechanic's
liens for "work done by any person . . . and for the materials
used" in the construction of any building, 585 A.2d 73, 74 (R.I.
1991) (quoting R.I. Gen. Laws § 34-28-1 (1984)), the plaintiff's
rental of several pieces of excavation equipment to the
defendant did not qualify as the furnishing of materials, see
Logan, 585 A.2d at 74.  In so ruling, the court explained:

> "It is generally held under applicable lien laws
> that machinery not (a) totally depreciated by use on
> the property or (b) incorporated into the improvement,
> or (c) in connection with which labor was also
> supplied could not be the basis of a valid lien."  Air
> Service Co. v. Cosmo Investments, Inc., 155 S.E.2d
> 413, 414 ([Ga. Ct. App.] 1967).  The excavation
> equipment in question was not totally depreciated by
> its use, nor was it incorporated into the improvement.

16

> Therefore, it does not satisfy the definition of materials.

Id. (parallel citations omitted).  Here, of course, the I-beams and cribbing are incorporated – if only temporarily – into Ogontz Hall, which is precisely why the Kents sent Osgood a letter forbidding him from removing his property from their premises.  Given the substantial differences between the excavators in Logan and the materials at issue here, and the nature of their respective uses, Logan is no obstacle to a determination that Osgood is entitled to a mechanic's lien based on the Kents' continuing use of his I-beams and cribbing.  The Idaho case on which the Kents rely, Great Plains Equipment, Inc. v. Northwest Pipeline Corp., 979 P.2d 627, 633-36 (Idaho 1999), is very similar to Logan, and nothing in that case would bar a lien based on a rental fee for Osgood's I-beams and cribbing. In Great Plains, the Idaho Supreme Court set aside the trial court's decision that the plaintiff could recover unpaid rental charges for leased equipment, id. at 636, where "the leased equipment was not incorporated into, or consumed and destroyed by, the construction project," id. at 635.  In this case, until Osgood's I-beams and cribbing are removed from Ogontz Hall, that leased equipment is incorporated into the improvement.

In short, the I-beams and cribbing at issue here are not like a load of concrete, destined to be a part of Ogontz Hall

for as long as the building shall stand, but neither are they like a cement mixer that Osgood could have hitched to a truck and hauled away at any time.  Given the New Hampshire Supreme Court's directive to construe the mechanic's-lien statute liberally, in order to effectuate its remedial purpose, see Alex Builders, 161 N.H. at 24, the court concludes that for purposes of that statute, Osgood's I-beams and cribbing are materials he furnished continuously for as long as they were (or are) incorporated into Ogontz Hall.  Thus, the rental fees for those materials may be secured by a mechanic's lien.

### E. Osgood's Lack of Diligence

The Kents' final argument is that Osgood should be denied a mechanic's lien, under the principles of equity, due to his lack of diligence in seeking to protect his interests.  Osgood's diligence, or his lack thereof, is adequately measured by the time limit stated in RSA 447:9, and there is no principle of equity that would move the court to deny Osgood a lien he sought to perfect within that time limit.  Thus, the Kents' fourth argument is not persuasive.

### Conclusion

For the foregoing reasons, the Kents are entitled to some but not all of the relief they seek in their objection to

Osgood's attachment, document no. 4.  Specifically, Osgood is entitled to an attachment against the Kents' property, but only for the amount he claims to be owed for the rental of his I-beams and cribbing.  As to the remaining items on his August 30 bill, his motion to attach was not filed in time to perfect his mechanic's liens.  Accordingly, $23,750 of the attachment ordered by the Grafton County Superior Court is discharged, leaving in place an attachment in the amount of $12,000.

SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge

December 21, 2011

cc:  David P. Cullenberg, Esq.
     Aaron H. Simpson, Esq.