UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Jeffrey Osgood
d/b/a JP's Concrete,
     Plaintiff

   v.                                  Case No. 11-cv-477-SM
                                       Opinion No. 2012 DNH 195
George and Evelyn Kent,
     Defendant

**O R D E R**

Pro se plaintiff, Jeffrey Osgood, brings this action seeking damages for defendants' alleged breach of contract. Under the parties' contract, Osgood was to have done certain shoring, demolition, and concrete work on defendants' property. Osgood claims to have partially performed his obligations, but says defendants unlawfully terminated the contract before he could complete his work. He seeks compensation for work actually performed, as well as lost profits. Defendants deny any wrongdoing and counterclaim that Osgood actually breached the contract by failing to perform in accordance with its specifications. They seek damages for their alleged losses.

Defendants move for summary judgment, asserting that there are no genuinely disputed material facts and claiming that they are entitled to judgment as a matter of law. Osgood objects. For the reasons discussed, defendants' motion is necessarily denied.

**Standard of Review**

When ruling on a motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

**Background**

In September of 2010, Osgood entered into a contract with defendants, Lynn and George Kent. In exchange for payment of approximately $190,000.00, Osgood agreed to perform jacking, shoring, demolition, and concrete work on a structure known as Ogontz Hall. The Kents acted as general contractors of the project, with the assistance of Bruce Stewart, whom the Kents engaged as their structural engineer, and John Dawson, their onsite representative.

Ogontz Hall is an unusual (and somewhat unconventional) structure.  It is a multi-level, predominantly post and beam, timber-framed building, with approximately 9,000 square feet of space on the first level.  The structure's major support columns consist of more than 40 un-sawn native pine trees, with framing connections consisting largely of mortise and tenon joinery, with steel lags and bolts.  As a result of the building's unusual design, the support columns can exert point loads as high as 38,000 pounds on the foundation walls.  It is, then, critical that the building's foundation be particularly sturdy.

When the Kents discovered that the building's original foundation was structurally deficient, they fired their architect and solicited bids from various contractors to demolish the original pre-cast foundation, and replace it with conventional column footings and a cast-in-place foundation.  Osgood was awarded the job and entered into a contract with the Kents to perform the specified work.  The contract itself is relatively brief, and consists of just two pages plus a six-item list that, in general terms, outlines the services to be provided by Osgood. It does, however, incorporate by reference the so-called "Contract Documents," which are defined to include the architectural drawings, as well as the engineering drawings and specifications.

After doing some site work and then jacking and shoring the structure, Osgood poured the footings for the walls on October 27, 2010.  And, once the Kents' representative inspected and approved the footing work and rebar, Osgood constructed the wall forms and was ready to pour concrete by November 19.  At that point, the Kents apparently experienced some delay in paying for the footing work, which delayed the next phase of Osgood's work (and allowed the forms and rebar to be exposed to the elements for longer than anyone had expected).  But, by December of 2010, they brought their account with Osgood current and he poured the concrete foundation wall.  Upon inspection (and subsequent testing), however, the Kents' structural engineer was not satisfied with the quality of the concrete Osgood used and concluded that his work on the wall needed to be redone.  Osgood disagreed.  By letter dated May 6, 2011, the Kents terminated their contract with Osgood and this litigation ensued.

According to the Kents, the "Contract Documents" that were incorporated by reference into their contract with Osgood specify that the concrete foundation wall must have a compressive strength of 4,000 pounds per square inch ("psi"), after 28 days of curing.  Although they have identified numerous alleged deficiencies in the foundation wall that Osgood poured, the

4

Kents' primary complaint is that subsequent testing revealed that it did not meet the 4,000 psi requirement.

Neither party has submitted copies of the so-called Contract Documents.  Consequently, the court cannot determine the precise scope of Osgood's obligations under the contract or the standards by which his work was to have been measured.  And, while the Kents assert that those documents required Osgood to order (and use) a 4,000 psi concrete mix, Osgood denies that the contract contained such a requirement.  See Osgood Deposition (document no. 37-2) at 291.  Instead, says Osgood, he was merely required to provide a concrete wall which, after 28 days of proper curing, would have a compressive strength of 4,000 psi.  Id. at 293.  And, although he acknowledges that he ordered a "3,000 psi wall mix" from the concrete supplier, Osgood says he delivered a wall that met the specifications set forth in his contract.  In support of that position, he points to testing performed on the concrete used in the wall (and taken directly from the supply truck on the day of the pour), which showed that, when properly cured, the concrete had a compressive strength in excess of 4,000 psi.  See, e.g., Affidavit of Bruce Stewart, Project Engineer (document no. 47-5) at para 49.

The Kents, on the other hand, stress the fact that subsequent testing of concrete samples removed from the finished wall showed a compressive strength of less than 4,000 psi.  But, says Osgood, the different test results (that is, between the samples taken directly from the concrete truck and those taken from the cured wall) can be explained by the fact that the Kents did not properly tent and heat the concrete after it was poured.  In other words, Osgood says that, unlike the test sample taken from the concrete truck, the wall did not properly cure because it was not adequately protected from the cold.  And, says Osgood, because his work was originally scheduled to be completed far earlier in the season, his bid did not include any tenting or heating services - work he says he would have happily provided if the Kents had agreed to pay him for it.  Instead, in an effort to save money, he says the Kents assigned responsibility for tenting and heating the wall to their onsite agents - work that was apparently never performed.  See Osgood Affidavit (document no. 47-2) at para. 23.  See also Affidavit of John Dawson (document no. 47-1) at para. 20 ("Payment [to Mr. Osgood] was made in December 2010 and the Kents expressed [a] desire to move forward.  [A]t this time Mrs. Kent and I discussed the need for winter conditions for the concrete.  I informed her that I could deliver insulating blankets to the site for placement by David Pratt, onsite handyman.  Mrs. Kent informed David Pratt that I would be

dropping off insulating blankets and he should use them to insulate the concrete.").

Perhaps not surprisingly, the Kents have a different explanation for the variances in the test results.  They say that after at least a portion of the wall was poured, the concrete supplier changed the mix it was sending to the jobsite by adding more cement (thereby making it stronger).  And, say the Kents, the sample on which Osgood relies was taken from one of those later deliveries.  They suggest that if a sample had been taken from the earlier concrete deliveries, testing would have revealed that it does not have the contractually-required 4,000 psi compressive strength.

On this record, it is entirely unclear which party is correct.  It is, however, clear that there are genuinely disputed material facts that preclude the court from ruling, as a matter of law, that Osgood breached his obligation under the contract to provide a concrete wall with 4,000 psi compressive strength, after 28 days of proper curing.  As to the remaining alleged deficiencies in Osgood's work (e.g., using improper fasteners and anchors, spraying release agent on rebar, leaving rebar exposed to the elements, etc.), Osgood says each of those alleged deviations from the engineering drawings was specifically

approved by the Kents' onsite agents, who were supervising and/or observing all of Osgood's work, including John Dawson.  <u>See</u> Osgood Deposition at 284-86.

## Conclusion

In light of the foregoing, there are plainly disputed issues of material fact that preclude the entry of judgment as a matter of law in favor of defendants.  Their motion for summary judgment (document no. 36) is, therefore, denied.  To the extent that plaintiff's objection to summary judgment (document no. 47) might also be construed as a motion to recuse defendant's counsel of record, that motion is also denied.  <u>See</u> Local Rule 7.1(a)(1) ("All motions must contain the word 'motion' in the title. . . Objections to pending motions and affirmative motions for relief shall not be combined in one filing.").

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

November 26, 2012

cc: Jeffrey Osgood, pro se
    David P. Cullenberg, Esq.